**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITANY TRANCKINO, by and through her Guardian ad Litem, TRACY COLE,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF ORANGE and DOE 1,<br><br>Defendants. | Case No.: 8:26-cv-00509-JWH-JDE<br>Hon. John W. Holcomb<br><br>**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:   May 22, 2026<br>Time:  9:00 a.m.<br>Crtrm: 9D |

1

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................8

II.     LEGAL STANDARD ...............................................................................9

III.    ARGUMENT ...........................................................................................10

        A.      PLAINTIFF'S MONELL CLAIMS ARE ADEQUATELY PLED...10

                1.      Plaintiff's Third Claim Adequately Pleads an
                        Unconstitutional Custom or Policy ...........................................10

                2.      Plaintiff's Fourth Claim Adequately Pleads Failure to
                        Train...........................................................................................13

                3.      Plaintiff's Fifth Claim Adequately Pleads Ratification............15

        B.      PLAINTIFF'S ADA CLAIM IS ADEQUATELY PLED...................17

IV.     CONCLUSION .......................................................................................22

# TABLE OF AUTHORITIES

## <u>Cases</u>

*AE ex rel. Hernandez v. County of Tulare*,

666 F.3d 631, 637 (9th Cir. 2012)................................................................11

*Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) ...............................................................................9

*Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 570 (2007) ...............................................................................9

*Blankenhorn v. City of Orange*,

485 F.3d 463, 484 (9th Cir. 2007)................................................................13

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Systems, Inc.*,

637 F.3d 1047, 1054 (9th Cir. 2011).............................................................9

*Capogrosso v. Sup. Ct.*,

588 F.3d 180, 184 (3rd Cir. 2009) .................................................................9

*Christie v. Iopa*,

176 F.3d 1231, 1239 (9th Cir. 1999)............................................................15

*City of Canton v. Harris*,

489 U.S. 378, 388 (1989) .................................................................11, 13, 14

*City of St. Louis v. Praprotnik*,

485 U.S. 112, 127 (1988) ..............................................................................15

*Conley v. Gibson*,

355 U.S. 41 (1957) ........................................................................................10

*Connick v. Thompson*,

563 U.S. 51, 63-64 (2011)........................................................................................14

*Davis v. Passman*,

442 U.S. 228 (1979) ...................................................................................................9

*Doe v. Cnty. of San Joaquin*,

No. 2:24-CV-00899 WBS CKD, 2024 WL 3697555, at *4 (E.D. Cal. Aug. 7, 2024).....................................................................................................................11

*Dorger v. City of Napa*,

No. 12-440, 2012 WL 3791447, at *4 (N.D. Cal. Aug. 31, 2012) ...............15

*Duvall v. Cnty. of Kitsap*,

260 F.3d 1124, 1138–39 (9th Cir. 2001)...........................................................17, 21

*Erickson v. Pardus*,

551 U.S. 89, 94 (2007) ...............................................................................................9

*Est. of Chivrell v. City of Arcata*,

623 F. Supp. 3d 1032, 1040 (N.D. Cal. 2022) .........................................15, 22

*Est. of Osuna v. Cnty. of Stanislaus*,

392 F. Supp. 3d 1162, 1175 (E.D. Cal. 2019).............................................11, 12

*Garcia v. Yuba Cnty. Sheriff's Dep't*,

559 F. Supp. 3d 1122, 1131 (E.D. Cal. 2021)..................................................15

*Grandstaff v. City of Borger, Texas*,

767 F.2d 161, 171 (5th Cir. 1985)........................................................................11

*Henry v. Cty. of Shasta*,

132 F.3d 512, 519 (9th Cir. 1997), opinion amended on denial of reh'g, 137 F.3d 1372 (9th Cir. 1998)........................................................................................11

LAW OFFICES OF
**DALE K. GALIPO**
CIVIL RIGHTS ATTORNEYS

*Hyde v. City of Willcox*,

23 F.4th 863, 874 (9th Cir. 2022)....................................................................14

*Ileto v. Glock, Inc.*,

349 F.3d 1191, 1200 (9th Cir. 2003)................................................................9

*Johnson v. Shasta Cnty.*,

83 F. Supp. 3d 918, 931-32 (E.D. Cal. 2015) ..............................................15

*Kirby v. City of E. Wenatchee*,

No. 12-0190, 2013 WL 1497343, at *14 (E.D. Wash. Apr. 10, 2013).........15

*Leatherman v. Tarrant Cnty.*,

507 U.S. 163 (1993) ........................................................................................10

*Lytle v. Carl*,

382 F.3d 978, 987–88 (9th Cir. 2004)............................................................15

*McRorie v. Shimoda*,

795 F.2d 780, 784 (9th Cir. 1986)..............................................................11, 12

*Monell v. Dep't of Soc. Servs.*,

436 U.S. 658 (1978) ..................................................................................10, 15

*N. Star Int'l v. Arizona Corp. Comm'n*,

720 F.2d 578, 580 (9th Cir. 1983)..................................................................10

*Newman v. San Joaquin Delta Cmty. Coll. Dist.*,

814 F. Supp. 2d 967, 978 (E.D. Cal. 2011)....................................................15

*Oviatt v. Pearce*,

954 F.2d 1470, 1474 (9th Cir. 1992)..........................................................11, 13

LAW OFFICES OF
**DALE K. GALIPO**
CIVIL RIGHTS ATTORNEYS

*Parratt v. Taylor*,

    451 U.S. 527, 535 (1981) ................................................................................ 10

*Pembaur v. City of Cincinnati*,

    475 U.S. 469, 480 (1986) ............................................................................... 10

*Shaw v. California Dept. of Alcoholic Beverage Control*,

    788 F.2d 600 (9th Cir. 1986) .......................................................................... 10

*Sheehan v. City & County of S.F.*,

    743 F.3d 1211, 1231 (9th Cir. 2014) ......................................................... 17–20

*Silvas v. E\*Trade Mortg. Corp.*,

    514 F.3d 1001, 1003-04 (9th Cir. 2008) .......................................................... 9

*Sommers v. City of Santa Clara*,

    516 F. Supp. 3d 967, 990 (N.D. Cal. 2021) ................................................... 22

*Starr v. Baca*,

    652 F.3d 1202, 1216 (9th Cir. 2011) .............................................................. 11

*Swierkiewicz v. Sorema N.A.*,

    534 U.S. 506 (2002) ....................................................................................... 10

*Tsao v. Desert Palace, Inc.*,

    698 F.3d 1128, 1143 (9th Cir. 2012) .............................................................. 13

*Ulrich v. City and County of San Francisco*,

    308 F.3d 968, 985 (9th Cir. 2002) .................................................................. 15

*Vos v. City of Newport Beach*,

    892 F.3d 1024, 1037 (9th Cir. 2018) ................................................. 17, 19, 20

6



**<u>Statutes</u>**

42 U.S.C. § 12131(2)..................................................................................21

42 U.S.C. § 1983........................................................................................10

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6) .........................................................................9, 10

Fed. R. Civ. P. 8.....................................................................................9, 10

**<u>Other Authorities</u>**

*Ninth Cir. Model Jury Instruction* 9.7 ......................................................15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On March 28, 2025, Orange County Sheriff's Department ("OCSD") deputies responded to a welfare check at the apartment of Britany Tranckino, a 38-year-old woman who suffered from schizophrenia. (Compl. 5:13-19.) The call reported that Ms. Tranckino was crying inside her home. (Compl. 5:13-14.) No crime had been reported. No one had been injured or threatened. (Compl. 5:14-16.)

OCSD knew Ms. Tranckino. Deputies had responded to her residence on prior occasions and were familiar with her mental health condition. (Compl. 5:20-22.) On those prior calls, OCSD had deployed a Crisis Assessment Team, a specialized unit trained to interact with people experiencing mental health crises. (Compl. 5:23-26.) On March 28, 2025, OCSD chose not to deploy a Crisis Assessment Team. (Compl. 5:26-28.) The deputies who arrived had no mental health training and were not accompanied by any mental health professional. (Compl. 6:1-3.)

When the deputies arrived, they aggressively knocked on Ms. Tranckino's door without clearly announcing themselves as police. (Compl. 6:4-6.) Believing intruders were at her door in the middle of the night, Ms. Tranckino came outside holding a kitchen knife. (Compl. 6:7-8.) The deputies stood several feet away with their guns already drawn. (Compl. 6:8-9.) The moment Ms. Tranckino realized the figures at her door were police officers, she lowered the knife and turned to walk back into her apartment. (Compl. 6:12-14.) As she walked away with the knife lowered and her back to the deputies, retreating into her own home, Defendant DOE 1 shot her multiple times. (Compl. 6:15-17.)

Ms. Tranckino is now permanently paraplegic. (Compl. 2:23-24, 7:15-20.)

Defendant County of Orange moves to dismiss four of Plaintiff's claims: Municipal Liability for Unconstitutional Custom or Policy (Claim 3); Municipal

8

Liability for Failure to Train (Claim 4); Municipal Liability for Ratification (Claim 5); and Violation of the Americans with Disabilities Act (Claim 6).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8, which "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 requires the plaintiff to make only (1) a short and plain statement of the court's jurisdiction, (2) a short and plain statement of the claim showing that the plaintiff is entitled to relief, and (3) a demand for judgment and relief. *Davis v. Passman*, 442 U.S. 228 (1979); *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). Under federal notice pleading, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. In deciding whether a pleading states a plausible claim for relief, the court considers the complaint's factual allegations, "together with all reasonable inferences" from those allegations. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011); *Capogrosso v. Sup. Ct.*, 588 F.3d 180, 184 (3rd Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Further, under federal notice pleading, courts are liberal in construing complaints in favor of plaintiffs, and allegations of material fact are taken as true and construed in the light most favorable to the pleader. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003-04 (9th Cir. 2008). In reviewing a dismissal for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6), the court must accept all material

allegations in the complaint as true and construe them in the light most favorable to the appellant. *N. Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578, 580 (9th Cir. 1983). In *Conley v. Gibson*, 355 U.S. 41 (1957), the United States Supreme Court explained that dismissal for failure to state a claim should only be granted under narrow circumstances, and complaints should not be dismissed unless it appears beyond doubt that the plaintiff cannot prove any facts supporting her claim entitling her to relief. *Conley*, 355 U.S. at 45-46.

Civil rights actions are governed by the pleading requirements of Federal Rules of Civil Procedure 8. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). There is no heightened pleading requirement for civil rights cases, and the United States Supreme Court has repeatedly rejected attempts by the Courts of Appeals to impose heightened pleading requirements in civil rights cases. *Id*, *Leatherman v. Tarrant Cnty.*, 507 U.S. 163 (1993). To assert a claim under 42 U.S.C. § 1983, a plaintiff has an obligation to put the defendants and the court on notice of what claims are raised in his or her complaint by properly alleging that she has been deprived a federal statutory or constitutional right by a person acting under color of state or local law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

## III.    ARGUMENT

### A.    PLAINTIFF'S MONELL CLAIMS ARE ADEQUATELY PLED

#### 1.    Plaintiff's Third Claim Adequately Pleads an Unconstitutional Custom or Policy

Plaintiff may establish liability under *Monell* by showing a constitutional violation caused by a policy, custom, or practice of the public entity.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). A policy is a formally adopted rule, statute or guideline adopted by a public entity. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). A custom or practice are more informal in nature, and *Monell* liability may be imposed for a constitutional violation of resulting from persistent yet informal conduct of public employees. *Shaw v. California Dept. of*

*Alcoholic Beverage Control*, 788 F.2d 600 (9th Cir. 1986) (pattern of police misconduct for repeated discriminatory law enforcement acts against black bar owners). *Monell* liability may also be based on a policy of inaction that amounts to a failure to protect constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

"At the pleading stage, [a] plaintiff need not prove the existence of [] a custom, but merely allege sufficient facts to make the claim plausible." *Doe v. Cnty. of San Joaquin*, No. 2:24-CV-00899 WBS CKD, 2024 WL 3697555, at *4 (E.D. Cal. Aug. 7, 2024) (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) and *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012)). "The policy or custom itself need only be alleged in general terms." *Est. of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1175 (E.D. Cal. 2019).

A policy may be inferred from the conduct of a municipality after an incident when no steps are taken to reprimand or otherwise take action in response to egregious conduct. *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (citing *Grandstaff v. City of Borger, Texas*, 767 F.2d 161, 171 (5th Cir. 1985)). The "subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy," and where there is no indication that the municipality took any action, besides attempting to avoid liability in response to dangerous conduct, it is reasonable to infer that such conduct is in accordance with a policy. *Grandstaff*, 767 F.2d at 171. Indeed, the Ninth Circuit has long had a "rule that post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but is highly probative with respect to that inquiry." *Henry v. Cty. of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997), *opinion amended on denial of reh'g*, 137 F.3d 1372 (9th Cir. 1998). "[T]he policy or custom itself need only be alleged in general terms" as "[i]t is a rare plaintiff who will have access to the precise contours of a policy or custom prior to having engaged in discovery, and requiring a plaintiff to plead its existence in detail is

likely to be no more than an exercise in educated guesswork." *Est. of Osuna*, 392 F. Supp. 3d at 1174–1175 (citations omitted).

Here, Plaintiff has alleged sufficiently specific facts to support a claim of unconstitutional custom or policy, including but not limited to the County's custom and practice of failing to deploy Crisis Assessment Teams when responding to calls involving known mentally ill individuals, despite having such resources available and despite having deployed them to Ms. Tranckino herself on prior occasions. (Compl. 5:23-28; 12:23-27.) The Complaint also alleges the County's custom of using excessive force against individuals in mental health crisis when reasonable alternatives, including CAT deployment, are available (Compl. 11:13-15); its custom of treating excessive uses of force as "within policy," including incidents in which deadly force was used against individuals in mental health crisis who posed no immediate threat of death or serious bodily injury (Compl. 12:1-5); its custom of refusing to discipline, terminate, or retrain deputies when incidents of excessive force are brought to light (Compl. 12:6-8); a "code of silence" under which deputies do not report fellow deputies' misconduct (Compl. 12:9-11); a policy of inaction and indifference toward excessive force by deputies, particularly against vulnerable populations such as the mentally ill (Compl. 12:12-15); and a custom of providing inadequate training on handling encounters with mentally ill persons and on compliance with Welfare and Institutions Code §§ 5150 and 5158 (Compl. 12:16-22).

Consistent with these customs, the Complaint alleges that DOE 1 was not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the shooting of Ms. Tranckino. (Compl. 10:23-26.) That post-incident inaction is itself probative of a preexisting custom. *See McRorie*, 795 F.2d at 784. The County and its final policymakers had actual or constructive knowledge of these customs and acted with deliberate indifference to their

foreseeable consequences. (Compl. 13:1-7.) Those customs were the moving force behind the deprivation of Ms. Tranckino's constitutional rights. (Compl. 10:26-27.)

Accordingly, these allegations are sufficient to support a *Monell* claim for unconstitutional custom or policy.

### 2.    Plaintiff's Fourth Claim Adequately Pleads Failure to Train

"[A] local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt*, 954 F.2d at 1474 (citing *Cantons*, 489 U.S. at 388. "A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012). A local government's failure to train its employees "may serve as the basis for § 1983 liability…where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388. Here, Plaintiff contends that the County failed to adequately train OCSD deputies to handle the usual and recurring situations they predictably encounter — including responding to calls involving people known to be experiencing a mental health crisis, and the proper use of deadly force in those encounters. (Compl. 13:22-27.) The Complaint alleges that this failure caused DOE 1 to escalate, rather than de-escalate, an interaction with a known schizophrenic woman who posed no immediate threat — and to resort to deadly force where less-lethal alternatives, including CAT deployment, were available. (Compl. 14:3-7; 5:23-28; 6:23-24.) A plaintiff alleging a failure to train claim must show: (1) he was deprived of a constitutional right; (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons with whom [its police officers] are likely to come into contact"; and (3) his or her constitutional injury would have been avoided had the municipality properly trained those officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007).

Here, Plaintiff has specifically alleged the failure to adequately train OCSD deputies in at least six areas: (a) de-escalating interactions with individuals experiencing a mental health crisis (Compl. 14:3-7); (b) managing fear so that it does not become unreasonable and objectively unjustifiable (Compl. 14:8-12); (c) employing proper police tactics, including situational awareness, to prevent negligent tactical decisions (Compl. 14:13-17); (d) communicating effectively between officers prior to using force (Compl. 14:18-20); (e) deploying and utilizing Crisis Assessment Teams when interacting with known mentally ill individuals, despite the County having such resources available (Compl. 14:21-24); and (f) complying with Welfare and Institutions Code §§ 5150 and 5158 in encounters with individuals known to be mentally ill (Compl. 14:25-28). The County was deliberately indifferent to the obvious consequences of these training deficiencies (Compl. 15:6-10), and the failure to train was so closely related to the deprivation of Ms. Tranckino's rights as to be the moving force behind her injuries (Compl. 15:1-5).

Defendant argues that Plaintiff cannot establish deliberate indifference without alleging a pattern of similar prior constitutional violations by untrained deputies. (MTD 16:25-17:6.) But the Supreme Court has expressly recognized that, "in a narrow range of circumstances," a pattern of prior violations is unnecessary where "the unconstitutional consequences of failing to train could be so patently obvious." *Connick v. Thompson*, 563 U.S. 51, 63-64 (2011); *see also Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022). The paradigmatic example is *Canton*'s hypothetical of a city that arms its officers but provides no training on the constitutional limits of deadly force, a circumstance in which the need for training is "so obvious, that failure to do so could properly be characterized as deliberate indifference." *Canton*, 489 U.S. at 390 n.10 (internal quotes omitted). This case fits squarely within that exception. Deploying armed deputies to respond to calls involving people known to be experiencing a mental health crisis, without

specialized training in mental health crisis response and de-escalation presents an obvious and predictable risk of constitutional violations.

Many courts have found that law enforcement response to mental health crisis is one of the circumstances contemplated by *Connick* because "[s]erious injuries and death are the obvious and highly predictable consequences of sending untrained and armed officers to respond to mental health crises." *Garcia v. Yuba Cnty. Sheriff's Dep't*, 559 F. Supp. 3d 1122, 1131 (E.D. Cal. 2021) (*citing Kirby v. City of E. Wenatchee*, No. 12-0190, 2013 WL 1497343, at *14 (E.D. Wash. Apr. 10, 2013); *Dorger v. City of Napa*, No. 12-440, 2012 WL 3791447, at *4 (N.D. Cal. Aug. 31, 2012); *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 814 F. Supp. 2d 967, 978 (E.D. Cal. 2011)).

Accordingly, Plaintiff has sufficiently pled specific facts to sustain a claim for municipal liability pursuant to OCSD's failure to train its deputies. *Est. of Chivrell v. City of Arcata*, 623 F. Supp. 3d 1032, 1040 (N.D. Cal. 2022) (failure to train adequately pled based on similar factual allegations); *Johnson v. Shasta Cnty.*, 83 F. Supp. 3d 918, 931-32 (E.D. Cal. 2015);

### 3. Plaintiff's Fifth Claim Adequately Pleads Ratification

Liability under a Section 1983 *Monell* theory may attach when a final policymaker ratifies a subordinate's unconstitutional action and the basis for it. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999); *see generally Monell*, 436 U.S. 658. To show ratification, a plaintiff must prove that "authorized policymakers approve a subordinate's decision and the basis for it." *Christie*, 176 F.3d at 1239 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality)); *see also Lytle v. Carl*, 382 F.3d 978, 987–88 (9th Cir. 2004) ("[R]atification requires both knowledge of the alleged constitutional violation, and proof that the policymaker specifically approved of the subordinate's act."); *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 985 (9th Cir. 2002); *see also* Ninth Cir. Model Jury Instruction 9.7. In alleging her ratification claim,

Plaintiff must show: (1) that the involved officers acted under color of law; (2) the unconstitutional acts of the shooting officer deprived the plaintiff of his or her constitutional rights; (3) the final policymaker acted under color of law; (4) the final policymaker had final policymaking authority from the County of Orange; (5) the final policymaker ratified the shooting officer's acts and the basis for them, and knew of and approved of the shooting officer's acts.

Here, these elements have been met. First, Plaintiff has alleged that DOE 1 acted under color of state law and within the course and scope of his employment with the County of Orange. (Compl. 15:24-26.) Second, DOE 1's unconstitutional acts deprived Ms. Tranckino of her Fourth Amendment right to be free from excessive force when he shot her without justification as she walked away into her own home, posing no immediate threat of death or serious bodily injury. (Compl. 16:1-3; 6:15-22.) Third, a final policymaker for the County, acting under color of state law, with final policymaking authority concerning the acts of DOE 1 and the bases for them, ratified those acts. (Compl. 16:7-10.) Fourth, that final policymaker had a documented history of ratifying unconstitutional and unreasonable uses of force, including deadly force, by OCSD deputies. (Compl. 16:4-6.) Fifth, the final policymaker knew of and specifically approved of DOE 1's use of deadly force against Ms. Tranckino when she was not an immediate threat of death or serious bodily injury — and has determined, or will determine, that DOE 1's conduct was "within policy." (Compl. 16:10-14; 16:21-22.) Consistent with that approval, DOE 1 has not been disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the shooting. (Compl. 16:23-24.)

Defendant argues that mere failure to overrule a subordinate's actions, without more, cannot support a ratification claim. (MTD 18:21-19:9.) That is true, but Plaintiff alleges something more: an affirmative determination by the County's final policymaker that DOE 1's conduct was "within policy." Official OCSD policy provides that deadly force may not be used against an individual unless the

16

individual poses an immediate risk of death or serious bodily injury to the deputies or others. (Compl. 16:15-20.) DOE 1's conduct deviated from that official policy because Ms. Tranckino posed no such threat. (*Id*.) The final policymaker's determination that this unconstitutional use of excessive force was nonetheless "within policy" is not mere acquiescence, it is an affirmative endorsement of conduct the County's own written rules forbid.

Accordingly, Plaintiff has sufficiently pled specific facts to sustain a Monell claim against the County under a ratification theory.

### B.   PLAINTIFF'S ADA CLAIM IS ADEQUATELY PLED

Title II of the ADA prohibits a public entity from discriminating against any "qualified individual with a disability." *Sheehan v. City & County of S.F.*, 743 F.3d 1211, 1231 (9th Cir. 2014). To state a claim under Title II of the ADA, a plaintiff generally must show: "(1) she is an individual with a disability; (2) she is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) she was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of her disability." *Id.* at 1232. In the arrest context, the second element is satisfied where officers fail to make reasonable modifications to their tactics to accommodate a known disability, causing the disabled person to suffer greater injury than would otherwise have occurred. *Vos v. City of Newport Beach*, 892 F.3d 1024, 1037 (9th Cir. 2018); *Sheehan*, 743 F.3d at 1233. For compensatory damages, a plaintiff must additionally show deliberate indifference, i.e., knowledge that harm to a federally protected right was substantially likely and a failure to act upon that likelihood. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138–39 (9th Cir. 2001).

Ms. Tranckino satisfies each element. First, she was a qualified individual with a disability: she suffered from a documented and serious mental illness, a fact

well known to the Sheriff's Department from numerous prior contacts at her home. (Compl. 5:17-22; 17:7-10.) Second, the deputies failed to make reasonable modifications to accommodate that disability. Despite knowing Ms. Tranckino was in mental health crisis (Compl. 5:20-22; 5:13-14; 6:7), the deputies made no attempt to slow the encounter, summon specialized resources, or employ de-escalation tactics before resorting to deadly force. (Compl. 5:26-28; 6:1-3; 7:1-5.) Multiple reasonable accommodations were obviously available, most notably, the Department's own CAT Team, which had successfully resolved several prior encounters with Ms. Tranckino without injury to her or anyone else. (Compl. 5:23-26.) Third, the discrimination was by reason of her disability: it was her mental health crisis itself that generated the call and shaped every step of the encounter, and the deputies' failure to treat it as such directly caused Ms. Tranckino's injuries. (Compl. 17:23-18:2; 5:13-14; 7:11-20; 18:3-5.) Each element of an ADA reasonable accommodation claim is therefore met, and the analysis is further confirmed by the Ninth Circuit's leading cases applying these principles to a closely analogous fact patterns.

In *Sheehan*, police responded to a report that a mentally-ill resident of a group home had a knife and was making threats toward others. 743 F.3d at 1217-20. The woman initially brandished the knife toward the officers, but she then retreated to her private room. *Id*. Instead of "wait[ing] for backup and to employ[ing] less confrontational tactics," the officers decided to enter her room and ending up shooting her. *Id*. at 1220, 1233. The Ninth Circuit concluded that, under these facts, the plaintiff had stated a valid claim under the ADA "that the officers failed to reasonably accommodate her disability by forcing their way back into her room without taking her mental illness into account and without employing tactics that would have been likely to resolve the situation without injury to herself or others." *Id*. at 1232.

Here, just like the woman *Sheehan*, Ms. Tranckino initially brandished a knife when she came out of her apartment but then turned and retreated into her home. DOE 1 shot her after she turned to retreat into her home, when she did not pose a threat of severe bodily injury or death to him. Just as in *Sheehan*, the deputies could have reasonably accommodated her disability by "wait[ing] for backup and to employ[ing] less confrontational tactics." One obvious reasonable accommodation would have been to request and wait for a CAT Team, which is precisely what had been done in several previous incidents with Ms. Tranckino in the past, all of which were able to be resolved without anyone being killed. (Compl. 5:23-28; 17:23-18:2).

In *Vos v. City of Newport Beach*, 892 F.3d 1024, 1037 (9th Cir. 2018), the Ninth Circuit applied the *Sheehan* framework and denied summary judgment on the plaintiff's ADA claim. The officers were responding to a 911 call reporting Vos's erratic behavior in a 7-Eleven convenience store. *Id*. at 1028. Vos was acting very aggressively: he had threatened to take a hostage, and he had attacked and injured a person with scissors. *Id*. at 1029. Upon arrival, officers called for backup, leading to a standoff between Vos and eight officers. *Id*. at 1029–30. The officers were armed with various levels of force: one 40-mm less-lethal firearm, Tasers, and lethal weapons. *Id*. at 1033. Minutes later, Vos charged towards the officers at a full sprint, brandishing a metal object, and officers fatally shot him. *Id*. at 1029–30.

The Ninth Circuit found that Plaintiff had provided sufficient evidence for their ADA claim because "the officers here had the time and the opportunity to assess the situation and potentially employ the accommodations identified by the Parents, including de-escalation, communication, or specialized help." *Vos*, 892 F.3d at 1037. Here, Ms. Tranckino was far less threatening than Vos, who had actually attacked someone with scissors and threatened to take a hostage. Ms. Tranckino had not hurt anyone, and there was nobody in the apartment with her.

LAW OFFICES OF
DALE K. GALIPO
CIVIL RIGHTS ATTORNEYS

The officers could have reasonably accommodated her mental illness by employing de-escalation, communication, or specialized help, instead of shooting her as she retreated into her own home with her back facing the officers.

The Complaint identifies multiple reasonable accommodations that were available and feasible under the circumstances: deploying the CAT Team (Compl. 5:23–26; 17:27–18:2), employing de-escalation and non-lethal force procedures (Compl. 17:25–26), training deputies to interact peacefully with mentally impaired individuals (Compl. 17:23–25), giving a verbal warning before resorting to deadly force (Compl. 6:25–27), using available less-lethal alternatives such as the Tasers the deputies were carrying (Compl. 6:23–24), and clearly identifying as police at the door (Compl. 6:4–6). Each was feasible on the facts pled. This was not a rapidly evolving emergency but a non-emergency welfare call about a woman crying — no crime reported, no injuries, no one in danger. (Compl. 5:13–16.) The deputies had distance and time to act. (Compl. 6:8–9; 7:6–10.) Ms. Tranckino had already lowered her knife and was walking away from the deputies with her back turned when DOE 1 fired. (Compl. 6:12–22.) And the deputies were on prior notice of her disability and of the Department's own prior CAT response when faced with calls involving Ms. Tranckino. (Compl. 5:20–26.) Whether a particular accommodation was reasonable on these facts is a fact-bound inquiry that cannot be resolved on the pleadings. See Vos, 892 F.3d at 1037 (denying summary judgment where officers "had the time and the opportunity to assess the situation and potentially employ" the identified accommodations).

Defendant argues that Plaintiff cannot establish denial of a service because deputies arrived and conducted a welfare check. (MTD 21:23-22:14.) That argument is inconsistent with *Sheehan*: an ADA claim is not defeated because patrol officers respond to the scene. The pleadings track the ADA claim in *Sheenhan*, basing the alleged violation on the officers actions and inactions, not the mere fact that they were there.

Defendants argue that Ms. Tranckino is not a qualified individual. But the Complaint pleads that Ms. Tranckino is a "qualified individual" with a mental impairment, specifically schizophrenia, that substantially limited her ability to care for herself and control her mental health condition as defined under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2). (Compl. 17:7-10). Moreover, the Complaint pleads that OCSD and DOE 1 knew Ms. Tranckino was schizophrenic and had deployed a CAT team to interact with her on several occasions.

Defendant argues Plaintiff has not pled intentional discrimination, which is established by showing deliberate indifference, and is necessary in order to recover monetary damages. (MTD 23:6.) Deliberate indifference under *Duvall* requires: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act on that likelihood. 260 F.3d at 1139. Both are amply pled here. First, OCSD knew Ms. Tranckino was schizophrenic and mentally disabled. (Compl. 5:20–22; 6:9–11.) The Department also knew that the appropriate response to a person in Ms. Tranckino's condition was deployment of the CAT Team; it had used that very accommodation with this very plaintiff on prior occasions, each of which was resolved without injury. (Compl. 5:23–26.) Second, Plaintiff adequately pled failure to act because she alleges the deputies failed to deploy CAT or utilize reasonable alternatives tactics to lethal force, including de-escalation, communication, or specialized help. (Compl. 5:26–28; 18:1–2.) No medical or mental health professional was present. (Compl. 6:1–3.) The deputies made no meaningful attempt at de-escalation or appropriate communication strategies for a person in psychiatric crisis (Compl. 7:1–5; 17:25–26), and instead immediately escalated to deadly force (Compl. 7:1–5). These allegations easily clear the Duvall bar at the pleading stage.

21

For all the reasons above, this portion of the motion should be denied. *Sommers v. City of Santa Clara*, 516 F. Supp. 3d 967, 990 (N.D. Cal. 2021); *Est. of Chivrell*, 623 F. Supp. 3d at 1043.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied. Should the Court grant any portion of the motion, Plaintiff respectfully requests leave to amend.

Dated: May 1, 2026                    **LAW OFFICES OF DALE K. GALIPO**

By:   /s/   *Cooper Alison-Mayne*
      Dale K. Galipo
      Cooper Alison-Mayne
      *Attorneys for Plaintiff*

22

**Certificate of Compliance**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains **4,665** words, which complies with the 7,000 word limit of L.R. 11-6.1.

Dated: May 1, 2026            **LAW OFFICES OF DALE K. GALIPO**

                              By:   /s/    *Cooper Alison-Mayne*
                                    Dale K. Galipo
                                    Cooper Alison-Mayne

                                    *Attorneys for Plaintiff*